IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRYAN W. WILDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| CALIBER HOME LOANS, INC., | § | |
| | § | No. 3:18-cv-3010-E-BN |
| Defendant/Counter-<br>Plaintiff/Third-Party<br>Plaintiff, | § | |
| | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| ELIZABETH M. WILDER, | § | |
| | § | |
| Third-Party Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Bryan W. Wilder challenges, through this *pro se* action, "the constitutionality of Supreme Court Rule 736[ – or Texas Rule of Civil Procedure 736, providing for expedited foreclosure proceeding – ]because it violates Article V of the United States of America Constitution, the 14th Amendment to the Constitution and Section (a) of 22.004 of the Texas Government Code." Dkt. No. 9.

His action has been referred to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Ada Brown. *See* Dkt. Nos. 37 & 38.

Earlier this year, the Court granted Defendant Caliber Home Loans, Inc. leave to file its Original Counterclaim and Third-Party Claim (the "Counterclaim"), seeking

a declaration for a nonjudicial foreclosure of the loan Mr. Wilder and his wife, Elizabeth M. Wilder, obtained, encumbering real property located at 1317 Cedar Hill Avenue, Dallas, Texas 75208 (the "Property") – that is at the center of this litigation (and previous litigation) between the parties. *See* Dkt. Nos. 22 & 23.

The Wilders moved to dismiss the Counterclaim. *See* Dkt. No. 27. Caliber responded, *see* Dkt. No. 32, and the Wilders replied, *see* Dkt. No. 34.

Caliber also moved for summary judgment in its favor on the pending requests for declaratory relief: (1) the challenge to the validity and constitutionality of Texas Rule of Civil Procedure 736; and (2) its request for a declaration of the right to proceed with a nonjudicial foreclosure and writ of possession. *See* Dkt. Nos. 29 & 30. The Wilders responded, *see* Dkt. No. 33, and Caliber replied, *see* Dkt. No. 35.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that the Court should deny the Wilders' motion to dismiss the Counterclaim and grant Caliber's motion for summary judgment, dismissing Mr. Wilder's claim for declaratory relief with prejudice and granting Caliber summary judgment on its request for a declaration authorizing it to proceed with the nonjudicial foreclosure.

## Legal Standards and Analysis

I.    <u>Motion to Dismiss</u>

Although the Wilders cite Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) as grounds to dismiss the Counterclaim, they do not substantively assert that Caliber, through the Counterclaim, fails to state a claim upon which relief may be granted. *See*

*generally* Dkt. No. 27. The Wilders argue instead that the Court lacks subject matter jurisdiction over the Counterclaim, *see id.* at 4-9, and, relatedly, that the Court lacks authority to grant the declaratory relief that Caliber seeks (as the Declaratory Judgement Act itself does not grant subject matter jurisdiction), *see id.* at 9-14; *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). The Wilders also assert, in sum, that

> Caliber cannot bring a Counterclaim and Third-Party Claim into a constitutional challenge of a state statute or rule. Caliber attempts to affect a foreclosure procedure through the federal court and this constitutional challenge, Caliber's entire motion consists of so-called material facts which have nothing to do with the constitutional challenge and are not germane to the original complaint.

*Id.* at 2.

But supplemental jurisdiction appears to answer the Wilders' jurisdictional concerns.

> Supplemental jurisdiction is codified in 28 U.S.C. § 1367 and gives the district court discretion to exercise jurisdiction over state-law claims when: (1) federal-question jurisdiction under 28 U.S.C. § 1331 is proper and (2) the state-law claims derive from a common nucleus of operative facts. *See Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 221 (5th Cir. 2012). To determine whether to exercise supplemental jurisdiction over a state-law claim, the Court considers whether: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. *See* 28 U.S.C. § 1367(c); *Hicks v. Austin I.S.D.*, 564 F. App'x 747, 748 (5th Cir. 2014); *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 n.4 (5th Cir. 2009). The Court is guided by these statutory factors set forth in section 1367(c) as well as the common law factors of judicial economy, convenience, fairness, and comity. *Brookshire Bros.*, 554 F.3d at 602.

*Hernandez v. ARC Trading Co.*, No. 3:17-cv-2057-BN, 2018 WL 2017680, at *4 (N.D. Tex. May 1, 2018).

"[N]o single factor is dispositive," and the Court must make its "decision in light of the specific circumstances of the case at bar." *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F. App'x 765, 769 (5th Cir. 2015) (per curiam) (quoting *Brookshire Bros.*, 554 F.3d at 602).

The parties do not dispute that the Court has jurisdiction over this action under Section 1331. *See, e.g.,* Dkt. No. 3 (compl.), ¶ 13 ("This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331."). And, in granting Caliber leave to file the Counterclaim, the Court explained how the Counterclaim relates to the Mr. Wilder's challenges to Rule 736:

> Wilder argues that Caliber's proposed counterclaim and third-party claim is outside the scope of this case: "The defendant cannot bring a counterclaim and a third party complaint into a constitutional challenge of a statute or rule. ... The counterclaim and third-party complaint ... rely only on the alleged violations of a breach of contract and are nor germane or connected to the constitutional challenge of the Supreme Court of Texas Rule 736." Dkt. No. 20 at 1-2. But Caliber explains it
>
> > has initiated two foreclosure actions under Texas Rule of Civil Procedure 736 seeking an Order to allow it to foreclose the Loan that is the subject of Defendant's proposed Original Counterclaim and Third-Party Claim. In response to Defendant's filing of each of these actions, Plaintiff filed his own suit, including the instant action, in order to have the Rule 736 foreclosure proceedings dismissed. In order to stop the potentially endless cycle of Plaintiff filing suit in order to have Defendant's Rule 736 foreclosure proceedings dismissed, Defendant's Motion for Leave to file an Original Counterclaim and Third-Party Claim seeking an Order to allow Defendant to proceed with a nonjudicial foreclosure of the Loan should be granted.
>
> Dkt. No. 21 at 1.

> Also applicable to the parties' lawsuits,
> "[a] proceeding or order under Rule 736 is automatically stayed if a respondent files a separate, original proceeding in a court of competent jurisdiction that puts in issue any matter related to the origination, servicing, or enforcement of the loan agreement, contract, or lien sought to be foreclosed prior to 5:00 p.m. on the Monday before the scheduled foreclosure sale." If an automatic stay is in effect, any foreclosure sale of the property is void.

*Reddick v. Deutsche Bank Nat'l Trust Co.*, No. 3:16-cv-1997-D, 2017 WL 6343542, at *3 (N.D. Tex. Dec. 12, 2017) (quoting Tex. R. Civ. P. 736.11(a), then citing Tex. R. Civ. P. 736.11(d); brackets omitted).

> And a lender may not assert a Rule 736-based "counterclaim in a borrower's suit against the lender." *Id.* (citing *Steptoe v. JPMorgan Chase Bank, N.A.*, 464 S.W.3d 429, 433 (Tex. App. – Houston [1st Dist.] 2015, no pet.) ("Although not expressly addressed by Rule 736, it is evident ... that a Rule 736 proceeding cannot be brought as a counterclaim in a borrower's suit against the lender. Rather, it is a special, expedited proceeding with a unique procedural mechanism that is not compatible with the administration of a suit brought by a borrower to challenge the propriety of a loan agreement." (citing, in turn, *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682, 682-83 (Tex. App. – Houston [1st Dist.] 2011, no pet.) (holding that a borrower may not assert a counterclaim in a Rule 736 proceeding)))).

> Caliber seeks to end the "cycle of [Wilder] filing suit" through a counterclaim seeking a declaratory judgment authorizing non-judicial foreclosure – not a counterclaim under Rule 736. *See* Dkt. No. 16-7 at 5-7. And, while Texas courts have held that a lender may not assert a Rule 736 counterclaim in a borrower's suit against it – and, conversely, a borrower may not assert a counterclaim in a lender's Rule 736 proceeding – that authority does not seem to support Wilder's argument that Caliber's proposed counterclaim may not be added to a federal action challenging Rule 736 on due process grounds.

*Wilder v. Caliber Home Loans, Inc.*, No. 3:18-cv-3010-N-BN, 2019 WL 652462, at *2-*3

(N.D. Tex. Feb. 15, 2019).

The Court should therefore find that the Counterclaim and the challenge to Rule 736 arise from a common nucleus of operative facts – the parties' continuing cycle of litigation related to Caliber's attempts to foreclose on the Property. And the Court

should further find that, "in light of the specific circumstances of [this] case," *Brookshire Bros.*, 554 F.3d at 602 – discussed more fully in the Court's previous order, *see* Dkt. No. 22 – that the statutory and common law factors favor retaining jurisdiction over the Counterclaim (as opposed to dismissing it on the Wilders' motion); *cf. Woodrow v. Satake Family Trust*, No. C 06-2155 WDB, 2006 WL 2092630, at *1-*2 (N.D. Cal. July 27, 2006) (in a fair housing action alleging discrimination on the basis of familial status, in which defendants filed a counterclaim for breach of contract based on plaintiffs' failures to vacate and to pay rent, the court concluded that it was "very confident that it is constitutional under 28 U.S.C. § 1367 to exercise supplemental jurisdiction over the counterclaim" because "[a]t the center of this case is a fight about why Defendants sent a 60-day eviction notice to Plaintiffs. Clearly there is an historically limited time frame and set of interactions between the parties that give rise to the claims and defenses and counterclaims at issue in the case. Accordingly, the federal and state claims form part of the same case or controversy under Article III of the United States Constitution and exercising supplemental jurisdiction is thus entirely appropriate and permissible." (emphasis omitted)).

The Court should deny the Wilders' motion to dismiss the Counterclaim.

II.    <u>Motion for Summary Judgment</u>

A.    **Legal Standards**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is

material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

-7-

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City*

*of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

**B.    Analysis**

1.    Rule 736

Mr. Wilder chose to name Caliber as the sole defendant in a federal lawsuit challenging the constitutionality of Rule 736. The Court therefore entered an order on November 15, 2018 advising Mr. Wilder,

> to the extent that, through his complaint, Wilder challenges the constitutionality of a Texas statute – because he has not named as a party "the state, one of its agencies, or one of its officers or employees in an official capacity" – he also "must promptly ... file a notice of constitutional question stating the question and identifying the paper[ – here, the complaint – ]that raises it," FED. R. CIV. P. 5.1(a)(1)(B), and "serve the notice and [complaint] on ... the [Texas] attorney general ... either by certified mail or by sending it to an electronic address designated by the attorney general for this purpose," FED. R. CIV. P.

5.1(b).

Dkt. No. 5 (footnote omitted).[1]

In response to that order, Mr. Wilder

filed a Notice of Constitutional Challenge of Statute [Dkt. No. 9] "clarify[ing] that through this action, and as reflected in his Complaint, Plaintiff is challenging the constitutionality of Supreme Court Rule 736[ – or Texas Rule of Civil Procedure 736, providing for expedited foreclosure proceeding – ]because it violates Article V of the United States of America Constitution, the 14th Amendment to the Constitution and Section (a) of 22.004 of the Texas Government Code," *id.* at 2; *see also id.* (certifying that the Notice will be served on the Texas Attorney General).

Therefore, to the extent that Wilder challenges the constitutionality of a Texas statute affecting the public interest, the Court, in accordance with Federal Rule of Civil Procedure 5.1(b) and 28 U.S.C. § 2403(b), now certifies that challenge and gives notice to the Attorney General of Texas.

The Clerk of Court shall add the Texas Attorney General as an interested party and provide a copy of this order to the Attorney General.

Dkt. No. 17.

The Court added the Texas Attorney General (the "AG") as an interested party

and served that office, *see* Dkt. No. 18, and the AG acknowledged service but has not

---

[1] *See also* FED. R. CIV. P. 5.1 advisory committee note, 2006 Adoption ("Rule 5.1 requires a party that files a pleading, written motion, or other paper drawing in question the constitutionality of a federal or state statute to file a notice of constitutional question and serve it on the United States Attorney General or state attorney general. The party must promptly file and serve the notice of constitutional question. This notice requirement supplements the court's duty to certify a constitutional challenge to the United States Attorney General or state attorney general. The notice of constitutional question will ensure that the attorney general is notified of constitutional challenges and has an opportunity to exercise the statutory right to intervene at the earliest possible point in the litigation. The court's certification obligation remains, and is the only notice when the constitutionality of a federal or state statute is drawn in question by means other than a party's pleading, written motion, or other paper.").

appeared in this action.

But, in addition to repeating their arguments for why there is not subject matter jurisdiction over the Counterclaim (discussed above), *see* Dkt. No. 33 at 3-14, Mr. Wilder opposes Caliber's request for summary judgment on his claims in part based on a belief that the AG will appear or, alternatively, that the Court is obligated to either certify a question of law as to his challenge to the Texas Supreme Court or question the constitutionality of Rule 736 *sua sponte*:

> On January 23, 2019, this court issued an order certifying the constitutional challenge, Doc 17. There is nothing for the Plaintiff left to do but wait for this court to issue an order or undertake a procedure as to the constitutionality of the Texas Supreme Court Rule of Civil Procedure 736.
> Upon certifying the complaint as constitutional challenge the District Court was required to stay the proceedings and to undertake a procedure either to Certify a question to the Supreme Court of Texas or make that determination as to the constitutionality itself.

Dkt. No. 33 at 16.

Relatedly, Mr. Wilder argues that Caliber lacks standing to seek summary judgment on their claims:

> Caliber is without any authority to determine the constitutionality of a Texas statute or Supreme Court of Texas rule. As a corporate entity, Caliber has no standing or ability to argue as to the constitutionality of any Texas statute or court rule as it applies to Bryan Wilder. When the challenge is made in federal court to the constitutionality of a state statute and the State or one of its agencies is not joined as a party, the Texas Attorney General should be notified. On or about November 30, 2018, Plaintiff notified the Texas Attorney General regarding the instant constitutional challenge, (Doc 9) and the Court did so on January 23, 2019.
> ...
> Caliber has no role – special or otherwise – in the enforcement of Rule 736 or it's constitutional source and does not "possess any official

-13-

> authority ... to directly enforce it. Caliber, therefore, has no "personal
> stake" in defending its enforcement that is distinguishable from the
> general interest of every citizen of Texas.
>
> In the ordinary course, a litigant must assert his or her own legal
> rights and interests, and cannot rest a claim to relief on the legal rights
> or interests of third parties. Caliber attempts to act on behalf of the State
> of Texas and defend the constitutionality of Rule 736 on behalf of the
> State of Texas without having such authority to act on behalf of the State.
> ...
> [I]t is evident that Article III does not permit Caliber to defend the State
> of Texas initiatives the Attorney General has chosen not to defend.

*Id.* at 17, 18-19 (citations omitted).

First, while the Court may have been obligated to notify the AG of Mr. Wilder's

challenge to Rule 736 and allow the State to intervene, *see* 28 U.S.C. § 2403(b) – an

obligation the Court fulfilled – the State was under no obligation to intervene, *see, e.g.,*

*Voices for Choices v. Ill. Bell Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) ("The state

could have intervened in the litigation as a matter of right, 28 U.S.C. § 2403(b), but has

not done so....").

And, to the extent that Mr. Wilder's challenge to Rule 736 turns on issues of

state law, the Court is without the means to certify an unsettled question of state law

to the Texas Supreme Court, as that court "does not permit federal district courts to

certify state constitutional questions." *Marketic v. U.S. Bank Nat'l Ass'n*, 436 F. Supp.

2d 842, 852 n.7 (N.D. Tex. 2006) (citing TEX. R. APP. P. 58.1(a) ("The Supreme Court of

Texas may answer questions of law certified to it by any federal appellate court if the

certifying court is presented with determinative questions of Texas law having no

controlling Supreme Court precedent.")); *see also* TEX. CONST. art. V, § 3-c(a) ("The

supreme court and the court of criminal appeals have jurisdiction to answer questions

of state law certified from a federal appellate court.").

Further, Mr. Wilder chose to file this lawsuit in federal court attacking Rule 736 on, among other things, federal constitutional grounds and thus invoked the Court's jurisdiction under Section 1331. *Cf. Marketic*, 436 F. Supp. 2d at 852 n.7 ("Because federal jurisdiction is predicated on both a federal question and diversity of the parties, the Court was unable to remand the case to the state courts for determination." (citation omitted)).

And he chose to name Caliber, not the State of Texas, as the defendant. So he is mistaken to the extent that he believes that "[t]here is nothing ... left [for him] to do but wait for this court to issue an order or undertake a procedure as to the constitutionality" of Rule 736. As to the claims in the complaint – his challenges to that rule – this is his lawsuit, and he must prove an entitlement to relief on those claims, including carrying his burden to show that summary judgment, dismissing those claims, should be denied.

The Court should also reject the Wilders' standing argument. Article III does not provide a plaintiff standing to bring a claim against a defendant and at the same time deprive that defendant of standing to request summary judgment on the claim. To hold otherwise would not be consistent with the concept that Article III standing is defined in terms of cases or controversies. A case or controversy includes the parties on both sides of a dispute. Thus, if there is standing to bring a claim, there is standing to defend against it. *See, e.g., Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997) ("Article III, § 2, of the Constitution confines federal courts to the decision of

'Cases' or 'Controversies.' Standing to sue or defend is an aspect of the case-or-controversy requirement. To qualify as a party with standing to litigate, a person must show, first and foremost, 'an invasion of a legally protected interest' that is 'concrete and particularized' and '"actual or imminent."' An interest shared generally with the public at large in the proper application of the Constitution and laws will not do. Standing to defend on appeal in the place of an original defendant, no less than standing to sue, demands that the litigant possess 'a direct stake in the outcome.'" (citations omitted)).

Turning to the substance of the challenges to Rule 736, that challenge – as explained in the opposition to the summary judgment motion –

> is based on the adoption of the Supreme Court of Texas Rule 736, which was adopted pursuant to section 22.004 of the Texas Government Code, and in accordance with the Act of May 26, 2011, 82nd Leg., R.S., ch. 1282 (HB 1228).
> ...
> The Act (H.B. No.1228) does not authorize the SUPREME COURT OF TEXAS to create a rule to foreclose on anyone else other than the property homeowners' association and foreclosure of a property homeowners' association assessment lien. Plaintiff is not a member of a homeowners' association, Caliber is attempting to foreclose on a Deed of Trust lien and not on a homeowner's association lien, yet Rule 736, which was apparently created pursuant to H.B. No.1228, an act to enforce homeowner's association liens, does not allow foreclosure of a Deed of Trust. Rule 736 violates Section 22.004 of the Texas Government Code, which: may not abridge, enlarge, or modity the substantive rights of a litigant.
> However even if Rule 736 was enacted pursuant to STATE OF TEXAS legislature it would still deprive the Plaintiff as it does now of his constitutional protections under the V and/or the XIV Amendments of the United States Constitution – due process of law and it does so, although not relevant here, even if the Plaintiff was a member of homeowner's association.

-16-

Dkt. No. 33 at 14-15.

This explanation of Rule 736's origin – or its purpose – does not square with explanations set out in other decisions from, for example, state courts in Texas or decisions from other judges in this district.

Under article XVI, section 50(a)(6)(D) of the Texas Constitution, the homestead of a family or of a single adult person is protected from forced sale for the payment of all debts except, for instance, when an extension of credit is secured by a lien that may be foreclosed upon only by a court order. TEX. CONST. art. XVI, § 50(a)(6)(D); *see In re Dominguez*, 416 S.W.3d at 705. Under Texas Rule of Civil Procedure 735.1, a party seeking to foreclose a lien for, *inter alia*, a home equity loan, reverse mortgage, or home equity line of credit may file an application for an expedited order allowing the foreclosure of a lien under Rule 736. *See* TEX. R. CIV. P. 735.1; *see also* TEX. CONST. art. XVI, §§ 50(a)(6), 50(k), 50(t).

Rule 736, as referenced in Rule 735, sets forth the procedures and requirements for seeking an expedited foreclosure. *See* TEX. R. CIV. P. 735, 736. A party may seek a court order permitting the foreclosure of a lien by filing a verified application in the district court in any county where all or any part of the real property encumbered by the lien is located or in a probate court with jurisdiction over proceedings involving the property. *See id.* R. 736.1(a). The only issue to be determined in a Rule 736 proceeding is the right of the applicant to obtain an order to proceed with foreclosure under the "applicable law and the terms of the loan agreement, contract, or lien sought to be foreclosed." *Id.* R. 735.2. A respondent may file a response to the application, but the response may not raise any independent claims for relief, and no discovery is permitted. *See id.* R. 736.4, 736.5(d). The trial court must not conduct a hearing on the application unless the respondent files a response, but must hold a hearing "after reasonable notice to the parties" if a response is filed. *See id.* R. 736.6. At a hearing, the petitioner has the burden to prove the grounds for granting the order sought in the application. *See id.* If no response is filed, the petitioner may obtain a default order. *See id.* R. 736.7.

The court must issue an order granting the application if the petitioner establishes the basis for the foreclosure; otherwise, the court must deny the application. *See id.* R. 736.8(a). "An order granting or denying the application is not subject to a motion for rehearing, new trial, bill of review, or appeal." *Id.* R. 736.8(c). "Any challenge to a Rule 736

order must be made in a suit filed in a separate, independent, original proceeding in a court of competent jurisdiction." *Id.* An order issued pursuant to Rule 736 "is without prejudice and has no res judicata, collateral estoppel, estoppel by judgment, or other effect in any other judicial proceeding." *Id.* R. 736.9. After an order is obtained, the foreclosure may proceed. *Id.*

*In re OneWest Bank, FSB*, 430 S.W.3d 573, 576-77 (Tex. App. – Corpus Christi 2014, no pet.); *see also Spence v. Flagstaff Bank, F.S.B.*, No. 3:15-cv-3646-L, 2016 WL 236027, at *3 (N.D. Tex. Jan. 20, 2016) ("The Texas Supreme Court promulgated Rules 735 and 736 of the Rules of Civil Procedure, pursuant to Article XVI, Section 50(r) of the Texas Constitution, to provide expedited judicial foreclosure proceedings related to the foreclosure of liens under Article XVI, Section 50(a)(6) of the Texas Constitution. 61 TEX. B. J. 226, 226 (1998, amended 2000). The Texas Supreme Court's promulgation of Rules 735 and 736 was in response to the Texas legislature's enactment of section 51.002 of the Property Code, applicable to nonjudicial foreclosures. *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App. – Houston [1st Dist.] 2011, no pet.).").[2]

_____

[2] *Cf. Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871 F.3d 380, 383 (5th Cir. 2017) ("A Rule 736 proceeding is not 'an ordinary lawsuit,' but rather 'a faster, more streamlined alternative to judicial foreclosure.' *Huston v. U.S. Bank Nat'l Ass'n*, 359 S.W.3d 679, 682 (Tex. App. – Houston [1st Dist.] 2011, no pet.). Once the petitioner files a Rule 736 application for foreclosure, if the respondent files a response, Rule 736.6 requires that the court hold an evidentiary hearing before issuing an order on the application. A Rule 736 order 'is without prejudice and has no res judicata, collateral estoppel, estoppel by judgment, or other effect in any other judicial proceeding.' TEX. R. CIV. P. 736.9. 'After an order is obtained, a person may proceed with the foreclosure process under applicable law and the terms of the lien sought to be foreclosed.' *Id.*"); *Hearn v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-cv-2417-B, 2014 WL 4055473, at *4 (N.D. Tex. Aug. 15, 2014) ("[T]he Court doubts that the Rule 736 procedure for securing an order permitting foreclosure on a home equity

Against that background, Caliber offers competent summary judgment evidence, consistent with the caselaw set out above, that Rule 736 does not violate the Texas Government Code:

> Plaintiff claims that Rule 736 violates Section 22.004 of the Texas Government Code because Rule 736 "was apparently created pursuant to H.B. No. 1228," and H.B. No. 1228 "does not authorize the Supreme Court of Texas to create a rule to foreclose on anyone else other than the property homeowners' association and foreclosure of a property homeowners' association assessment lien." Pl.'s Comp., ¶¶ 8, 9. However, contrary to Plaintiff's assertion, Rule 736 was not created pursuant to H.B. No. 1228. Instead, Rule 736 was created fourteen years prior to the passage of H.B. No. 1228 by an Order dated January 27, 1998, pursuant to Article XVI, Section 50(r) of the Texas Constitution, which required the Supreme Court to promulgate rules of civil procedure for expedited foreclosure proceedings related to the foreclosure of liens such as the Deed of Trust that is at issue in this lawsuit. *See* Exhibits A-2, B; TEX. CONST. art. XVI § 50(r). Rule 736 was simply amended in accordance with H.B. No. 1228 to include property owners' associations' assessment liens. *See* Exhibit C.
>
> Additionally, Rule 736 "does not alter any foreclosure requirement or duty imposed under applicable law or the terms of the loan agreement, contract, or lien sought to be foreclosed." TEX. R. CIV. P. 735.2. Therefore, it does not "abridge, enlarge, or modify the substantive rights of a litigant" in violation of Section 22.004 of the Texas Government Code. TEX. GOV'T CODE § 22.004(a). Accordingly, Plaintiff's claim that Rule 736 violates the Texas Government Code is without merit.

Dkt. No. 30, ¶¶ 28 & 29.

The undersigned agrees with Caliber's assessment. And the Wilders neither directly refute it nor controvert Caliber's evidence. *See generally* Dkt. No. 33. The Court should therefore grant Caliber summary judgment as to this claim.

Taking up the constitutional challenges next, Rule 736, like all Texas "rules of

---

loan constitutes a judicial foreclosure.").

-19-

procedure[, has] 'the same force and effect as'" a statute. *In re City of Georgetown*, 53 S.W.3d 328, 332 (Tex. 2001) (orig. proceeding) (quoting *Mo. Pac. R.R. v. Cross*, 501 S.W.2d 868, 872 (Tex. 1973) (citing, in turn, *Freeman v. Freeman*, 327 S.W.2d 428, 433 (Tex. 1959))). And, where a plaintiff challenges the constitutionality of a state statute, "[a] court begins by presuming a statute's constitutionality, whether the basis of the constitutional attack is grounded in due process or equal protection." *Whitworth v. Bynum*, 699 S.W.2d 194, 197 (Tex. 1985) (citations omitted); *see also, e.g., Perez v. Phillip Morris, Inc.*, 224 F.3d 765 (table), 2000 WL 992267, at *3 (5th Cir. June 23, 2000) (per curiam) ("We presume that a Texas statute is constitutional." (citing *Cunningham v. Beavers*, 858 F.2d 269, 273 (5th Cir. 1988) ("Under a rational-basis review, the court presumes state legislation to be constitutionally valid. A classification imposed by statute or law must merely be reasonable in the light of its purpose and must bear a rational relationship to the objectives of the legislation so that all similarly situated people will be treated similarly. If evaluation of challenged legislation reveals any conceivable state purpose that can be considered as served by the legislation, then it must be upheld." (citations omitted)))).

Mr. Wilder asserts several reasons why he believes provisions of Rule 736 violate due process – it does not permit discovery; it does not provide for rehearing, new trial, bill of review, or appeal; it requires that a respondent affirmatively plead in response to certain matters; it prohibits a response from asserting an independent claim of relief; and it allows for the service of the summons and complaint only by mail. *See* Dkt. No. 3, ¶¶ 27-31.

Taking a step back, as set out above, "a party must secure a court order in order to foreclose on a home equity loan." *Hearn*, 2014 WL 4055473, at *4 (citing TEX. CONST. art. XVI § 50(a)(6)(C)). One option to obtain such an order is to "follow the procedures under Rule 736 to receive an expedited order 'allowing the foreclosure of the lien.'" *Id.* (quoting TEX. R. CIV. P. 736.1). And "the rules expressly distinguish between Rule 736 proceedings and judicial foreclosures, stating that '[a] Rule 736 order is not a substitute for a judgment for judicial foreclosure,' and that 'any loan agreement, contract, or lien that may be foreclosed using Rule 736 procedures may also be foreclosed by judgment in an action for judicial foreclosure.'" *Id.* (quoting TEX. R. CIV. P. 736.3). A Rule 736 proceeding is therefore "a 'special proceeding' that 'provides a faster, more streamlined alternative to judicial foreclosure,' but it is not necessarily part of the judicial foreclosure process." *Id.* (quoting *Huston*, 359 S.W.3d at 682).

And the provisions of Rule 736 provide for expedited review of Rule 736 proceedings while at the same time shielding the losing party from immediate adverse consequences while seeking review. *See, e.g., U.S. Bank, N.A. v. Morris*, No. 1:19-CV-352-LY, 2019 WL 5595235, at *3 (W.D. Tex. Oct. 30, 2019) ("An order granting or denying a foreclosure order 'is without prejudice and has no res judicata, collateral estoppel, estoppel by judgment, or other effect in any other judicial proceeding.' TEX. R. CIV. P. 736.9. The Texas Rules also contemplate collateral challenges to Rule 736 orders: 'Any challenge to a Rule 736 order must be made in a suit filed in a separate, independent, original proceeding in a court of competent jurisdiction.' TEX. R. CIV. P. 736.8(c)."); *Delay v. Household Fin. Corp. III*, No. A-14-CA-064-SS, 2014 WL 117034,

-21-

at *2 (W.D. Tex. Mar. 20, 2014) ("[T]he Rule 736 proceeding was automatically stayed – and would have been dismissed, had the Delays complied with the Rule – by the Delays' filing of this lawsuit." (citing TEX. R. CIV. P. 736.11(a), (c))).

> As the United States Court of Appeals for the Fifth Circuit has explained,
>
> because Texas law afforded the [plaintiffs] an adequate process for challenging the [Rule 736 order], their due process claim fails on the merits. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "In assessing what process is due ... substantial weight must be given to the good-faith judgments" of those who provide the procedures. [*Id.*] at 349. ...
> Texas law provided the [plaintiffs] an adequate procedure to challenge the [Rule 736 order] by filing an independent suit in a court of competent jurisdiction. *See* TEX. R. CIV. P. 736.8. The [plaintiffs], however, never argued that this lawsuit constitutes a Rule 736.8 proceeding. [They] cannot forgo procedures and remedies available to correct a state procedural error, and then belatedly claim they were denied due process because of that error.

*Burciaga*, 871 F.3d at 390 (citations omitted).

Mr. Wilder has not shown that Rule 736 violates due process where its purposefully limited scope is presumed constitutional and any error claimed as a result of expedited proceedings under Rule 736 may be meaningfully reviewed.

Mr. Wilder also has not shown how Rule 736 violates the constitutional right to equal protection – that right being "essentially a direction that all persons similarly situated should be treated alike," *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 212 (5th Cir. 2009) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985)); *see also Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) ("The Equal Protection Clause directs that persons similarly situated should be treated alike."

-22-

(citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982))).

To state an equal protection claim, a plaintiff typically alleges that he "received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Club Retro*, 568 F.3d at 212 (internal quotation marks omitted). Thus, no equal protection violation is alleged where a plaintiff "fails to allege any facts showing that [others were] similarly situated." *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015) (citing *Club Retro*, 568 F.3d at 213).

And, even where a plaintiff alleges an equal protection violation "on behalf of a 'class of one'" – by alleging "that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" – he still must make more than "conclusional allegations that others similarly situated have been [treated better, by offering] specific factual support for his assertions." *Kyles v. Garrett*, 222 F. App'x 427, 429 (5th Cir. 2007) (per curiam) (citations omitted).

Mr. Wilder fails to show how Rule 736 treats similarly situated individuals differently.

The Court should therefore grant Caliber summary judgment as to the Wilders' constitutional claims.

And, to the extent that Mr. Wilder seeks declaratory or injunctive relief based on his claims, a declaratory judgment and an injunction "are forms of relief based on underlying claims." *Taylor v. Chase Home Fin., N.A.*, No. 3:13-cv-4793-M-BN, 2014 WL

-23-

1494061, at *4 (N.D. Tex. Apr. 15, 2014) (citing *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 170-71 (5th Cir.1990) (declaratory judgment); *Cook v. Wells Fargo Bank, N.A.*, No. 3:10-cv-592-D, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010) (injunctive relief)). And, "[b]ecause the undersigned has determined that none of [Mr. Wilder's] claims can withstand dismissal at this time, [any] requests for declaratory and injunctive relief cannot survive." *Id.*

### 2.  Nonjudicial Foreclosure

Caliber moves for summary judgment on its counterclaim and third-party claim requesting a declaration authorizing it to proceed with a nonjudicial foreclosure as to the Property under Article 16, Section 50(a)(6) of the Texas Constitution and Section 51.002 of the Texas Property Code due to the Wilders' default under the February 2004 Texas Home Equity Note (Fixed Rate – First Lien) (the "Note"), in the amount of $320,000, in conjunction with a Texas Home Equity Security Instrument (First Lien) (the "Deed of Trust") (collectively the "Loan").

As stated above, Caliber "must establish beyond peradventure all of the essential elements of [this] claim ... to warrant judgment in [its] favor." *Fontenot*, 780 F.2d at 1194; *see also Witt v. Countrywide Home Loans, Inc.*, No. 3:06-cv-1384-D, 2007 WL 2296538, at *2 (N.D. Tex. Aug. 10, 2007) ("Concerning its motion for summary judgment on its counterclaims, however, because Countrywide will have the burden of proof on those claims at trial, it 'must establish "beyond peradventure all of the essential elements of the claim[s]."'" (quoting *Bank One, Tex., N.A. v. Prudential Ins.*

*Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (quoting, in turn, *Fontenot*, 780 F.2d at 1194))).

Another district court in Texas recently addressed a defendant's motion for summary judgment on a counterclaim requesting the same declaratory relief:

> The federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. "The federal Declaratory Judgment Act 'does not create a substantive cause of action' and 'is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law.'" *Carrie v. JPMorgan Chase Bank, N.A.*, No. 3:14-CV-3756-K, 2015 WL 11120991, at *9 (N.D. Tex. June 29, 2015), *report and recommendation adopted*, No. 3:14-CV-3756-K, 2015 WL 11120992 (N.D. Tex. July 29, 2015) (quoting *Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08-cv-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (Fitzwater, C.J.) (citations and internal quotation marks omitted)). "The Act is an authorization and not a command, and allows federal courts broad (not unfettered) discretion to grant or refuse declaratory judgment." *Id.*
>
> A counterclaim for a declaratory judgment may be utilized to seek adjudication with respect to the validity and/or superiority of a lien. *See, e.g.*, *WFG Nat'l Title Ins. Co. v. Kavac Holding Co., LLC*, No. 4:18-cv-368, 2019 WL 636722, at *3 (S.D. Tex. Jan. 22, 2019) ("Lien superiority is properly determined in a Declaratory Judgment Act claim."); *Kingman Holdings, LLC v. Bank of America, N.A.*, No. 4:11-cv-33, 2011 WL 4431970, at *3-4 (E.D. Tex. Sept. 22, 2011) (concluding that the validity and superiority of a lien can be determined through a declaratory judgment action in federal court in Texas). To foreclose under a Deed of Trust with a power of sale, Texas law requires the lender or its assignee to demonstrate that: (1) a debt exists; (2) the debt is secured by a lien created under Article 16, Section 50(a)(6) of the Texas Constitution; (3) the borrower is in default under the Note and Deed of Trust; and (4) the lender has properly served the borrower with notice of default, and if applicable, notice of acceleration. *See* TEX. PROP. CODE § 51.002(d); *see also Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014).

*Greco v. LSF9 Master Participation Trust*, No. 4:18-cv-00671-ALM-CAN, 2019 WL 4934654, at *8 (E.D. Tex. Aug. 12, 2019), *rec. adopted*, 2019 WL 4508956 (E.D. Tex. Sept. 19, 2019).

As in *Greco*, here, Caliber has established beyond peradventure the elements required to succeed on its request for a declaratory judgment for authorization to proceed with a nonjudicial foreclosure under Article 16, Section 50(a)(6) of the Texas Constitution and Section 51.002 of the Texas Property Code:

- A debt exists, as the Wilders executed the Note in the amount of $320,000, and the Note has been assigned to Caliber (which now has possession of the Note and Deed of Trust). *See* Dkt. No. 30-1, ¶¶ 6-8; Dkt. Nos. 30-2, 30-3, 30-4, & 30-5.

- The Note was secured by a Deed of Trust created under Article 16, Section 50(a)(6) of the Texas Constitution. *See* Dkt. No. 30-1, ¶¶ 6 & 9; Dkt. No. 30-3.

- Caliber is the mortgagee of the Loan. *See* Dkt. Nos. 30-1 & 30-2; TEX. PROP. CODE § 51.0001(4).

- The Wilders are currently in default. *See* Dkt. No. 30-1, ¶¶ 10-14; Dkt. Nos. 30-6, 30-7, & 30-8.

- And Caliber has established that the Wilders were properly served with the notices of default. *See id.*

For these reasons, the Court should enter a declaratory judgment authorizing Caliber to proceed with foreclosure and sale of Property subject to the requirements of

-26-

Section 51.002 of the Texas Property Code.

## Recommendation

The Court should (1) deny the motion to dismiss Defendant Caliber Home Loans, Inc.'s Original Counterclaim and Third-Party Claim [Dkt. No. 27]; (2) grant Caliber's motion for summary judgment [Dkt. No. 29], dismissing Plaintiff Bryan W. Wilder's challenges to the validity and constitutionality of Texas Rule of Civil Procedure 736 and granting Caliber's request for a declaration authorizing it to proceed with a nonjudicial foreclosure under Article 16, Section 50(a)(6) of the Texas Constitution and Section 51.002 of the Texas Property Code; and (3) enter final judgment in this action accordingly.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: January 29, 2020

                             _____
                             DAVID L. HORAN
                             UNITED STATES MAGISTRATE JUDGE